IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT, IN AND FOR CLAY COUNTY, FLORIDA

DOUGLAS W. SMITH

    Plaintiff,

vs.

REV GROUP, INC.,
and GENERAL RV CENTER, INC.

    Defendant(s).

_____/

CASE NO.: _____

# COMPLAINT

COMES NOW the Plaintiff, Douglas W. Smith, by and through his/her/their/its undersigned counsel and files this its Complaint against Defendants, REV Group, Inc. and General RV Center, pursuant to the Florida Rules of Civil Procedure and in support thereof states as follows:

1. Plaintiff, Douglas W. Smith ("Plaintiff"), is an individual who was at all times relevant hereto residing in the State of Florida.

2. Defendant, REV Group, Inc. ("Defendant" or "Manufacturer" and sometimes collectively with the Plaintiff as the "Party"), is a foreign corporation authorized to do business in the State of Florida, County of Clay, and is engaged in the manufacture, sale, and/or distribution of motor vehicles and related equipment and service in Florida. Manufacturer is also in the business of marketing, supplying, and selling written warranties to the public at large through a system of authorized dealerships, including General RV Center ("Seller" and sometimes with Manufacturer as "Defendants"). Defendants do business in and maintain offices in Orange Park, Florida.

**JURISDICTION & VENUE**

3. This is an action seeking damages in excess of $30,000, exclusive of attorneys' fees and court costs.

4. At all times material to this action, Defendants were engaged in "trade or commerce" as defined in Section 501.203(8), Florida Statues, when Defendants engaged in marketing, selling, and distributing automobiles, warranties, and service contracts to consumers.

5. Venue is proper in Clay County because Defendants are engaged in business in Clay, have offices in Clay County, and have an agent or other representative in Clay County.

## BACKGROUND

6. On or about February 8, 2022, Plaintiff purchased from Seller new 2022 Admiral 28A, manufactured and distributed by Manufacturer with Vehicle Identification No. 1F64F5DN8M0A11615 ("Vehicle") for valuable consideration. A true and correct copy of the Purchase Contract is attached hereto, made a part hereof, and marked Exhibit "A."

7. Plaintiff purchased the Vehicle from Seller in Orange Park, Florida.

8. The Florida Legislature recognizes that a duly franchised motor vehicle dealer is an authorized service agent of the manufacturer. *See* Fla. Stat. sec. 681.101.

9. The contract price of the Vehicle totaled $108,515.17.

10. The cost of all collateral charges including registration charges, document fees, sales tax, bank charges and finance charges, totaled approximately $116,030.46.

11. In consideration for the purchase of the Vehicle, Defendants issued to Plaintiff several warranties, guarantees, affirmations, or undertakings with respect to the material and/or workmanship of the vehicle and/or remedial action in the event the vehicle failed to meet the promised specifications.

12. Specifically, Manufacturer issued and supplied to Plaintiff its written warranty, which included a warranty, fully outlined in the Manufacturer's new car warranty booklet.

13. The above-referenced warranties, guarantees, affirmations, and/or undertakings are/were part of the basis of the bargain between Plaintiff and Defendants.

14. Plaintiff's purchase of the Vehicle was induced by, and Plaintiff reasonably relied upon, Defendants' Written Warranty and/or Service Contract.

15. Defendants engaged in an aggressive advertising and marketing campaign in order to induce Plaintiff and other consumers to purchase its vehicles, including the Vehicle, from a dealership that was authorized by Defendants to sell its vehicles and issue its written warranties to consumers, like Seller.

16. Plaintiff's purchase of the Vehicle was induced by, and Plaintiff reasonably relied upon, Defendants' representations.

17. Defendants were in privity with Plaintiff based upon its issuance of a written warranty and its role in the sale, distribution, and repair of the subject Vehicle through its authorized sales and servicing agents including Seller as evidenced by the following:

> a) Manufacturer enters into sales and service agreements with its authorized dealers that are located in numerous counties of this state including the county wherein this lawsuit was filed.
> b) Manufacturer requires its authorized dealers to display Manufacturer's logo on each authorized dealer's sign outside the dealer.
> c) Manufacturer requires its authorized dealers to display Manufacturer's logo on the uniforms of authorized dealers' service personnel.
> d) Manufacturer requires its authorized dealers to display Manufacturer's logo on the repair records that are given to authorized dealers' customers as receipts for service to their vehicles.
> e) Manufacturer requires its authorized dealers to seek authorization for performing repairs as covered by Manufacturer's warranty.
> f) Manufacturer makes the final decision as to whether or not repairs made to a vehicle are to be covered by Manufacturer's warranty.
> g) Manufacturer reimburses its authorized dealers for repairs covered by Manufacturer's warranty.
> h) Manufacturer requires its authorized dealers to document repairs on repair invoices in a method prescribed by Manufacturer.
> i) Manufacturer provides its authorized dealers with specific limitations on the amount of time its dealers may seek reimbursement for specific warranty repairs to a vehicle.
> j) Manufacturer requires its authorized dealers to provide its customers

with Manufacturer's written warranty when a new vehicle is sold by Manufacturer's authorized dealer.

k) Finally, Manufacturer supervises each and every authorized dealer through a system of zone offices that is set up to monitor dealerships located within each respective county of the State of Florida.

l) Manufacturer provides its authorized dealers with repair manuals and service bulletins to repair vehicles manufactured and/or distributed by Manufacturer.

18. Soon after the purchase and during the warranty period, Plaintiff experienced the various defects and/or nonconformities with the Vehicle listed herein.

19. During the warranty period, Plaintiff brought the Vehicle to Seller and/or an authorized service dealer of Manufacturer for various defects and nonconformities, including but not limited to a hole in the portable water tank due to the tank not be anchored in place that caused a flood of 50 gallons onto the floor; toilet plugged; wood around the portable water tank swelling up; the reclining sofa foot rest will not stay up; blinds not centered on the windows; frame of the motor home is starting to rust.

20. Defendants, through their authorized agents, were unable and/or failed to adequately repair the defects in the Vehicle as provided in Defendants' warranty and/or service contract after being afforded a reasonable opportunity to cure pursuant to 15 U.S.C. § 2310(e).

21. Plaintiff justifiably lost confidence in the Vehicle's safety and/or reliability.

22. As a result of Defendants' failures through their authorized dealership network and/or continuing defects and/or nonconformities in the Vehicle, the Vehicle cannot be utilized for its intended purpose; is rendered substantially impaired in its use, value, and/or safety; and is worthless to Plaintiff.

23. As a result of Defendants' failures through its authorized dealership network and/or continuing defects and/or nonconformities in the Vehicle, Plaintiff has suffered expenses, losses, and damages.

24. Said defects and/or nonconformities could not have reasonably been discovered by Plaintiff prior to Plaintiff's acceptance of the Vehicle.

25. Said defects and/or nonconformities are the direct result of one or more failures with Defendants-supplied materials and workmanship.

26. The limited repair or replacement remedy contained with Manufacturer's warranty failed of its essential purpose pursuant to F.S.A. § 672.719(2) due to Manufacturer's failure to repair the vehicle within a reasonable time.

27. Defendants

- failed to remedy a defect, malfunction, or nonconformity and/or failed to conform to the written warranty within a reasonable time and without charge;
- or breached an implied warranty arising under Florida law;
- or failed to repair a defect, malfunction, or non-conformity covered by a service contract within a reasonable time and without charge;
- or breached a duty imposed under the Uniform Commercial Code, Florida Statutes chapter 672;
- or made misrepresentations about the vehicle
- and/or failed to honor a Written Warranty and/or Service Contract

28. Defendants' failure(s) and/or misrepresentation(s) are a breach of Defendants' contractual and statutory obligations constituting, inter alia, a violation of the Magnuson-Moss Warranty Act; breach of express warranties; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; breach of contract; and constitute a deceptive and/or unfair trade practice.

29. Plaintiff has been and will continue to be financially damaged due to Defendants' failure to comply with the provisions of its Written Warranty and/or Service Contract.

30. Defendants received proper notice of the defects and/or nonconformities in the Vehicle and any and all repair attempts made.

31. As a result of these defects and Defendants' failure to timely repair the same, Plaintiff notified Defendants of the defects and/or nonconformities in writing prior to filing

the instant lawsuit.

32. Plaintiff has satisfied all prerequisites to the filing of this action.

## COUNT I
## MAGNUSON-MOSS WARRANTY ACT

33. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-32 of this Complaint.

34. Plaintiff is a "consumer" as defined by 15 U.S.C. § 2301 (3).

35. The Vehicle is a "consumer product" as defined by 15 U.S.C. § 2301 (1).

36. Manufacturer is a "supplier," "warrantor," and "service contractor" as defined by 15 U.S.C. § 2301 (4), (5), and (8) and is engaged in the business of making a consumer product directly available to Plaintiff.

37. Seller is an authorized dealership and/or agent of Manufacturer designated to sell and perform repairs on vehicles under Manufacturer's automobile warranties.

38. Manufacturer made a written warranty and/or service contract and/or is subject to the provisions of an implied warranty arising under Florida law.

39. Plaintiff's purchase of the Vehicle was accompanied by a written factory warranty for any defects in material or workmanship, comprising an undertaking in writing in connection with the purchase of the vehicle to repair or replace defective parts, or take other remedial action free vehicle failed to meet the specifications set forth in Manufacturer's warranty.

40. By the terms of its written warranties, affirmations, promises, and/or service contracts, Defendants agreed to perform effective repairs at no charge for parts and/or labor.

41. Plaintiff is entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said warranty.

42. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section 2301, et. seq. is applicable to Plaintiff's Complaint in that the Vehicle was manufactured, sold and purchased

6

after July 4, 1975, and costs in excess of ten dollars ($10.00).

43. The Magnuson-Moss Warranty Act requires Defendants to be bound by all warranties implied by Florida law. Said warranties are imposed on all transactions in the state in which the Vehicle was delivered.

44. Plaintiff has met all of its obligations and preconditions as provided in the written warranties.

45. Plaintiff has afforded Defendants a reasonable number of opportunities to conform the Vehicle to the aforementioned express warranties, implied warranties, and contracts.

46. Defendants failed to comply with the terms of its express warranties.

47. As a direct and proximate result of Manufacturer's failure to comply with its written warranty, Plaintiff, through no fault of its own, has suffered damages and is entitled to bring suit for such damages, fees, costs, and other legal and equitable relief.

48. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 (d)(2) provides:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

49. Upon successfully prevailing upon the Magnuson-Moss claim herein, all attorney's fees are recoverable and are demanded against Defendants.

50. Defendants' warranty was not provided to Plaintiff until after the Vehicle was delivered, making any and all limitations, disclaimers and/or alternative dispute provisions ineffective for failure of consideration.

51. Defendants' Dispute Resolution Program was not in compliance with 16 CFR 703 for the model year of the Vehicle.

7

**WHEREFORE**, Plaintiff prays for judgment against Manufacturer as follows:

a) Diminution in value of the Vehicle, and incurred and/or needed costs of repair, or, alternatively, the cost of cover as provided by Fla. Stat. § 672.712;

b) All incidental and consequential damages incurred;

c) An amount equal to the price of the subject Vehicle plus all collateral charges;

d) Reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and

e) An order of the Court in its equitable capacity directing Defendants to properly and completely repair any outstanding defects in the Vehicle and such other and further relief that the Court deems just and appropriate.

## COUNT II
## FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

52. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-32 of this Complaint.

53. Section 501.204(1), Florida Statues, provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in ... deceptive[] or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202 (2014).

54. Section 501.204(1) of the Florida Statutes provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

55. Section 501.976 of the Florida Statutes relating to vehicles provides:

It is an unfair or deceptive act or practice, actionable under the Florida Deceptive and Unfair Trade Practices Act, for a dealer to:
(1) Represent directly or indirectly that a motor vehicle is a factory executive vehicle or executive vehicle unless such vehicle was purchased directly from the manufacturer or a subsidiary of the manufacturer and the vehicle was used exclusively by the manufacturer, its subsidiary, or a dealer for the commercial or personal use of the manufacturer's, subsidiary's, or dealer's employees.

8

(2) Represent directly or indirectly that a vehicle is a demonstrator unless the vehicle complies with the definition of a demonstrator in s. 320.60(3).

(3) Represent the previous usage or status of a vehicle to be something that it was not, or make usage or status representations unless the dealer has correct information regarding the history of the vehicle to support the representations.

(4) Represent the quality of care, regularity of servicing, or general condition of a vehicle unless known by the dealer to be true and supportable by material fact.

(5) Represent orally or in writing that a particular vehicle has not sustained structural or substantial skin damage unless the statement is made in good faith and the vehicle has been inspected by the dealer or his or her agent to determine whether the vehicle has incurred such damage.

(6) Sell a vehicle without fully and conspicuously disclosing in writing at or before the consummation of sale any warranty or guarantee terms, obligations, or conditions that the dealer or manufacturer has given to the buyer. If the warranty obligations are to be shared by the dealer and the buyer, the method of determining the percentage of repair costs to be assumed by each party must be disclosed. If the dealer intends to disclaim or limit any expressed or implied warranty, the disclaimer must be in writing in a conspicuous manner and in lay terms in accordance with chapter 672 and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act.

(7) Provide an express or implied warranty and fail to honor such warranty unless properly disclaimed pursuant to subsection (6).

(8) Misrepresent warranty coverage, application period, or any warranty transfer cost or conditions to a customer.

(9) Obtain signatures from a customer on contracts that are not fully completed at the time the customer signs or which do not reflect accurately the negotiations and agreement between the customer and the dealer.

(10) Require or accept a deposit from a prospective customer prior to entering into a binding contract for the purchase and sale of a vehicle unless the customer is given a written receipt that states how long the dealer will hold the vehicle from other sale and the amount of the deposit, and clearly and conspicuously states whether and upon what conditions the deposit is refundable or nonrefundable.

(11) Add to the cash price of a vehicle as defined in s. 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. All fees or charges permitted to be added to the cash price by rule 69V-50.001, Florida Administrative Code, must be fully disclosed to customers in all binding contracts concerning the vehicle's selling price.

(12) Alter or change the odometer mileage of a vehicle.

(13) Sell a vehicle without disclosing to the customer the actual year and model of the vehicle.

(14) File a lien against a new vehicle purchased with a check unless the dealer fully discloses to the purchaser that a lien will be filed if purchase is made by check and fully discloses to the buyer the procedures and cost to the buyer for gaining title to the vehicle after the lien is filed.

(15) Increase the price of the vehicle after having accepted an order of purchase or a contract from a buyer, notwithstanding subsequent receipt of an official price

9

change notification. The price of a vehicle may be increased after a dealer accepts an order of purchase or a contract from a buyer if:

(a) A trade-in vehicle is reappraised because it subsequently is damaged, or parts or accessories are removed;

(b) The price increase is caused by the addition of new equipment, as required by state or federal law;

(c) The price increase is caused by the revaluation of the United States dollar by the Federal Government, in the case of a foreign-made vehicle;

(d) The price increase is caused by state or federal tax rate changes; or

(e) Price protection is not provided by the manufacturer, importer, or distributor.

(16) Advertise the price of a vehicle unless the vehicle is identified by year, make, model, and a commonly accepted trade, brand, or style name. The advertised price must include all fees or charges that the customer must pay, including freight or destination charge, dealer preparation charge, and charges for undercoating or rustproofing. State and local taxes, tags, registration fees, and title fees, unless otherwise required by local law or standard, need not be disclosed in the advertisement. When two or more dealers advertise jointly, with or without participation of the franchisor, the advertised price need not include fees and charges that are variable among the individual dealers cooperating in the advertisement, but the nature of all charges that are not included in the advertised price must be disclosed in the advertisement.

(17) Charge a customer for any predelivery service required by the manufacturer, distributor, or importer for which the dealer is reimbursed by the manufacturer, distributor, or importer.

(18) Charge a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale."

(19) Fail to disclose damage to a new motor vehicle, as defined in s. 319.001(9), of which the dealer had actual knowledge, if the dealer's actual cost of repairs exceeds the threshold amount, excluding replacement items.

56. Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by FDUTPA because Defendants market, sell, and/or distribute automobiles with written warranties and/or service contracts in Florida. *See* Fla. Stat. § 501.203 (2014).

57. Defendants marketed and advertised vehicles like the Vehicle and thereby made representations about the vehicle that were deceptive.

58. Plaintiff purchased the Vehicle in reasonable reliance on Defendants' representations and

Defendants' Written Warranty and/or Service Contract.

59. Defendants, however, failed to comply with the terms of the Written Warranty and/or Service Contract. Such failure is an unfair and deceptive business act or practice and a per se violation of FDUTPA. *See* Fla. Stat. sec. 501.976 (7).

60. Plaintiff, through representations made by the Defendants, had no reason to believe that Defendants would not honor the Written Warranty and/or Service Contract nor any reason to believe the Vehicle would have defects and/or nonconformities.

61. A reasonable consumer would have relied on Defendants' representations.

62. At all times, Plaintiff acted reasonably and in accordance with the terms of the Written Warranty and/or Service Contract by properly seeking repairs and notifying Defendants.

63. Defendants' delivery of the Vehicle with defects and/or nonconformities in contradiction to its representations is an unfair and deceptive business act or practice.

64. Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.211(2), provides:

> In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

65. Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. sec. 501.2105, provides:

> In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonably attorney's fees and costs from the nonprevailing party.

66. Section 501.203(3), Florida Statues, provides:

> (3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2006:
> (a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.;
> (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

67. Defendants' actions caused actual damages to Plaintiff for which Plaintiff is entitled to recovery in addition to attorney's fees and costs.

**WHEREFORE**, Plaintiff requests that this honorable Court enter judgment against Defendants, REV Group, Inc. and General RV Center, and award Plaintiff damages, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

*PLAINTIFF DEMANDS A TRIAL BY JURY*

/s/ *John Sczepanski*
John Sczepanski
Fla. Bar No. 1030982
Kirsten Brown
Fla. Bar No. 672181
Phone: (888) 830-1474
Fax: (888) 979-8403
Email: john@timothyabeel.com
**Counsel for Plaintiff**

**Add Attachments A & B**

# Exhibit A

# GENERAL RV CENTER

GeneralRV.com
1577 WELLS ROAD
ORANGE PARK, FL 32073
PHONE (904) 458-3000
FAX (904) 278-8808

## Purchase Agreement

6328786

| | |
|---|---|
| PURCHASER #1 | DOUGLAS W SMITH |
| PURCHASER #2 | |
| DATE | 02/08/2022 |
| Quote # | 397108 |
| ADDRESS | 4706 GILLOT BLVD |
| CITY | PORT CHARLOTTE |
| STATE | FL |
| ZIP | 33981 |
| Customer # | 1888998 |
| HOME PHONE | 506-434-4435 |
| COUNTY | CHARLOTTE |
| CELL PHONE #1 | 506-434-4435 |
| CELL PHONE #2 | |
| E-MAIL ADDRESS | PAMDOUGSMITH@GMAIL.COM |
| SALESPERSON | EINSMANN, DANIEL P |

| | | | |
|---|---|---|---|
| ☒ NEW ☐ USED | YEAR 2022 | MAKE ADMIRAL | |
| VEHICLE IDENTIFICATION NUMBER 1F64F5DN8M0A11615 | | MODEL 28A | |
| STOCK NO. 244343 | | ODOMETER 1285 | |
| | VEHICLE TYPE Class A | | |

### ACCESSORIES AND/OR EQUIPMENT

| Description | $ | |
|---|---|---|
| | 0 | 00 |

| | | |
|---|---|---|
| AGREED PRICE $ | 108,515 | 17 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| N/A | 0 | 00 |
| SUB-TOTAL | 108,515 | 17 |
| 1. TRADE-IN ALLOWANCE | 0 | 00 |
| 2. DOC FEE | 499 | 00 |
| 3. ELECTRONIC REGISTRATION FILING FEE | 20 | 00 |
| 4. TEMPORARY TAG FEE | 0 | 00 |
| 5. BATT. FEE $6.00 ($1.50 per) TIRE FEE $4.98 ($1.00 per) TITLE FEE (AL Only) | 10 | 98 |
| 6. TOTAL TAXABLE PRICE | 109,045 | 15 |
| 7. STATE ____ RATE ____ | 6,592 | 71 |
| COUNTY ____ RATE ____ | 0 | 00 |
| 8. DOC STAMP TAX | 0 | 00 |
| 9. LICENSE / TITLE / PLATE | 392 | 60 |
| 10. OUT OF STATE PUBLIC FEES | 0 | 00 |
| 11. LIEN | 0 | 00 |
| 12. TOTAL DELIVERED PRICE | 116,030 | 46 |
| 13. CURRENT DOWN PAYMENT | 0 | 00 |
| 14. CASH DUE ON DELIVERY | 116,030 | 46 |
| 15. BALANCE | 0 | 00 |

Agreed Price includes all factory and dealer rebates, discounts and incentives, and all dealer freight and preparation charges.

### DESCRIPTION OF TRADE-IN

| YEAR | MAKE | MODEL | TYPE |
|---|---|---|---|
| | | | |

| VEHICLE IDENTIFICATION NO. | APPRAISAL | BY: |
|---|---|---|
| | | |

| CURRENT ODOMETER READING | BALANCE OWED TO | BALANCE OWED |
|---|---|---|
| | | |

IF THIS IS FOR A USED MOTOR VEHICLE, THE INFORMATION ON THE WINDOW FORM (FEDERAL TRADE COMMISSION) IS PART OF THIS AGREEMENT. THE INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THIS CONTRACT OF SALE.

THIS AGREEMENT IS NOT BINDING UPON THE PURCHASER OR THE DEALER UNTIL SIGNED BY BOTH PARTIES, OR UNTIL CREDIT TERMS ARE APPROVED AND ACCEPTED BY THE DEALER, PURCHASER, AND LENDING INSTITUTION. IF CREDIT TERMS ARE NOT ACCEPTED, FULL DEPOSIT WILL BE REFUNDED TO PURCHASER. AGREEMENT BASED UPON AVAILABILITY OF VEHICLE. PURCHASER IS OF LEGAL AGE IN THIS STATE. YOU ARE AUTHORIZED TO CHECK MY CREDIT HISTORY.

### COMPANY POLICY

We must have your trade title, cashier's check, bank money order or a certified check for the balance of the purchase price, in addition to your down payment. A Document Processing Fee of $499.00 will be charged.

THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER. NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT. NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN, HAVE BEEN MADE THAT ARE NOT CONTAINED ON THIS DOCUMENT. PURCHASER HAS NOT RELIED ON ANYTHING NOT WRITTEN INTO THIS PURCHASE AGREEMENT. THEREFORE, NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV, EVEN IF ALLEGED TO BE A MISREPRESENTATION. BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS ALL ITS TERMS, INCLUDING THOSE PRINTED ON THE NEXT PAGE. THEY INCLUDE AN "AS IS" CLAUSE, A NON-REFUNDABLE DEPOSIT STATEMENT, A NON-RELIANCE CLAUSE, AND CHOICE OF LAW AND FORUM SELECTION CLAUSES INDICATING THAT MICHIGAN LAW APPLIES TO ALL POTENTIAL DISPUTES AND THAT ALL CLAIMS MUST BE FILED IN MICHIGAN. MISREPRESENTATION CANNOT BE GROUNDS TO RESCIND OR REVOKE THE PURCHASE OR THIS AGREEMENT.

PURCHASER'S SIGNATURE #1 _/s/ Douglas Smith_

PURCHASER'S SIGNATURE #2 ____

ACCEPTED DEALER'S SIGNATURE ____

GT4 201    REV 0321

PAGE 1 OF 2. SEE PAGE 2 FOR ADDITIONAL CONDITIONS.